IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01995-KAS

T.P.[1],

    Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#10], filed August 22, 2025, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for social security disability insurance pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Plaintiff filed an Opening Brief [#13], Defendant filed a Response [#15], and Plaintiff filed a Reply [#16]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the briefs, the case file, and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Signed Consent/Non-Consent Form* [#9]; *Order Reassigning Case* [#17].

## I.   Background

This social security appeal arises from Plaintiff's complaints of carpal tunnel and disabling pain in her back, neck, and knees that she states caused her to stop working in and around the fall of 2020. Tr. [#10-2] at 22, 55-56.[3] On May 24, 2022, Plaintiff filed an application for disability and disability insurance benefits under Title II and, on January 19, 2023, she filed an application for supplemental security income. *Id.* at 22. Plaintiff alleged disability beginning November 1, 2020. *Id*. Her claim was denied on May 26, 2022, and again upon reconsideration on September 1, 2023. *Id*. Plaintiff filed a request for a hearing before an administrative law judge (ALJ), which took place on July 17, 2024. *Id*. On August 30, 2024, the ALJ issued an unfavorable decision. *Id.* at 37.

## II.   Social Security Framework

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The

---

[3] The Court cites the Administrative Record [#10] according to the Court Transcript Index's pagination. The Court cites briefs according to the numbering stamped at the top of each page by the Court's CM/ECF docketing system.

existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If

not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

In making his or her assessment, an ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010).

**B.    The ALJ's Determination**

The ALJ addressed the first four steps in this case. At step one, the ALJ determined that Plaintiff met the Act's insured status requirements through December 31, 2025, and that she had not engaged in substantial gainful activity since November 1, 2020, the alleged onset date. Tr. [#10-2] at 24.

At step two, The ALJ found that Plaintiff suffered from the following severe impairments: (1) spondylosis and degenerative disc disease of the cervical spine with left radiculopathy/myeloradiculopathy and myelopathy of the cervical spinal cord; (2) degenerative disc disease and disc protrusion of the lumbar spine with radiculopathy; (3) mild degenerative disc disease of the thoracic spine; (4) osteoarthritis of the bilateral knees; (5) mild bilateral carpal tunnel syndrome; (6) mild persistent asthma; and (7) obesity. *Id.* at 25.

At step three, the ALJ found that Plaintiff's impairments did not, either separately or in combination, meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* at 27. The ALJ considered the first three severe impairments under listings 1.15 and 1.16 and found that they did not meet or medically equal such criteria. *Id.* The ALJ considered the fourth severe impairment under listing 1.18, the fifth severe impairment under listing 11.14, and the sixth severe impairment under listing 3.03, and likewise found that they did not meet or medically exceed such criteria. *Id.* at 27-28. The ALJ also considered the effect of Plaintiff's obesity in determining whether her other medically determinable impairments met or equaled the criteria for an established listing. *Id.* at 28.

At step four, the ALJ concluded that Plaintiff had the RFC to perform a reduced range of sedentary work, as defined in 20 C.F.R. § 404.1567(a) and 416.967(a).[4] The ALJ further found that Plaintiff

> can occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds. She can stand and/or walk 2 hours and sit 6 hours of an 8-hour workday, and she requires a cane for ambulation. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She can frequently handle, finger, and feel with the bilateral upper extremities. She can tolerate frequent exposure to temperature extremes and pulmonary irritants, but she can have no exposure to hazards, including unprotected heights.

*Id.* Based on the RFC and the testimony of an impartial vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a customer service representative as actually and generally performed. Tr. [#10-2] at 37. Thus, the ALJ found that Plaintiff was not disabled at step four.

On May 14, 2025, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Thus, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

### III.    Standard of Review

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson*, 602 F.3d at 1140. "Substantial evidence is such relevant evidence as a

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.." 20 C.F.R. § 404.1567(a).

reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks and modification omitted).

### IV.   Analysis

Plaintiff argues that the ALJ erred in three respects. First, Plaintiff argues that the ALJ's assessment of her pain was legally insufficient and unsupported by substantial evidence. *Opening Brief* [#13] at 41-46. Second, Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. *Id.* at 46-53. Third, Plaintiff

7

argues that the ALJ's evaluation of medical opinion evidence was legally deficient and not supported by substantial evidence. *Id.* at 53-61. Finding significant overlap between Plaintiff's various arguments, Defendant reframed the issues, arguing that (1) substantial evidence supports the RFC; (2) the Court should defer to the ALJ's findings concerning Plaintiff's pain; (3) the ALJ complied with agency requirements for assessing medical opinion evidence; and (4) substantial evidence supports the ALJ's step-four finding that Plaintiff was not disabled. *Response* [#15] at 4-22. The Court endeavors to address the issues in the order Plaintiff asserted them but will address duplicative arguments only once as the Court sees fit.

## A.      Plaintiff's Reports of Pain

Plaintiff first challenges the ALJ's assessment of her pain. *Opening Brief* [#13] at 41-46. Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017), sets out a two-step process for evaluating symptoms such as pain. At the first step, the ALJ determines whether "there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* In making this evaluation, the ALJ considers the medical evidence in the record along with the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

See id. at *5-8; see also Brownrigg v. Berryhill, 688 F. App'x 542, 545 (10th Cir. 2017). "[T]he ALJ need not consider every one of these factors," particularly where the evidentiary record is silent on a factor. Deherrera v. Comm'r, SSA, 848 F. App'x 806, 809 (10th Cir. 2021) (citing SSR 16-3P, 2017 WL 5180304, at *8). Further, an ALJ need not engage in "a formalistic factor-by-factor recitation of the evidence" when evaluating the functional effects of a claimant's subjective symptoms. Toledo v. Comm'r, SSA, No. 24-5001, 2024 WL 4357913, at *2 (10th Cir. Oct. 1, 2024) (quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012)). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10.

Here, Plaintiff testified that pain in her neck, back, and knees prevented her from sitting or standing for long durations. Specifically, she testified that she cannot sit or stand for longer than 20 minutes at a time. Tr. [#10-2] at 55. She estimated that she could tolerate alternating between sitting for 20 minutes and standing for 20 minutes for less than four hours. Id. at 57. She further testified that the only position she can tolerate for longer than 20 minutes is reclining with her legs elevated. Id. at 56.

9

At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her pain. *Id.* at 29. At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her pain were not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 29-30. The ALJ found that the medical record reflected improvements in Plaintiff's pain with surgery, physical therapy, and pain-management injections. *Id.* at 30, 32-33. Further, the ALJ reasoned that Plaintiff's alleged difficulty with sitting was not consistent with or supported by the objective medical evidence because she only reported on two occasions in the four-year period that her pain was worse with sitting. *Id.* at 34.

Plaintiff challenges the ALJ's assessment on various grounds. On the whole, however, Plaintiff's challenge seems to boil down to the fact that the ALJ did not explain or provide meaningful analysis about why the evidence supporting each factor led him to conclude that Plaintiff's subjective reports of pain were not entirely consistent with the record. *Opening Brief* [#13] at 43. The Court has carefully reviewed the ALJ's determination, Plaintiff's various arguments, and the relevant portions of the record. The Court is satisfied that the ALJ provided sufficient analysis to allow the Court to follow his reasoning and understand the bases for his conclusion. In other words, while a more detailed analysis may have been possible, the Court does not find the ALJ's determination so devoid of reasoning that it is unreviewable. *See Keyes–Zachary*, 695 F.3d at 1166 (declining to insist on "technical perfection" in an ALJ's decision but noting the importance of being able to follow the ALJ's reasoning on review). Further, although the evidentiary record suggests that ALJ could have reasonably reached a different conclusion, the Court ultimately agrees with Defendant that the ALJ's decision is supported by substantial

evidence and free of reversible legal error. In essence, Plaintiff asks the Court to reweigh the evidence or substitute the Court's judgment for that of the agency. This the Court cannot do; the administrative agency's findings are still supported by substantial evidence. Thus, in its review, the Court "may not displace the agency's choice between two fairly conflicting views, even [if] the court [could] justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks, brackets, and citation omitted).

Substantial evidence supports the ALJ's conclusion that Plaintiff's pain improved with surgery, physical therapy, and pain-management injections. Ex. 2F, Tr. [#10-7] at 448 ("Thus far, pain has been well controlled with injections."); Ex. 6F, Tr. at 1097 (showing Plaintiff discharged from occupational therapy with reduced pain at a level of 1-3 out of 10 in neck and shoulders); Ex. 7F, Tr. at 1130 (demonstrating that neck surgery improved pain, albeit slowly); Ex. 10F, Tr. at 1516 (noting "[s]trenth and pain levels continue to improve"); Ex. 15F, Tr. at 1593 (knee pain controlled with regular steroid injections); Ex. 17F, Tr. at 1715-18 (same); *id.* at 1733 (noting that Plaintiff has a history of "chronic neck pain," but is experiencing "markedly less pain" after surgery); *id.* at 1745 (again noting efficacy of injections on pain); Ex. 18F, Tr. [#10-8] at 2087 (same); *id.* at 2118 (same). The ALJ did not err by crediting the evidence in the record demonstrating the efficacy of Plaintiff's pain-management treatments. *See* SSR 16-3P, 2017 WL 5180304, at *8 (instructing an ALJ to consider the effectiveness of any medication to alleviate pain and any non-medication treatments an individual receives for relief of pain).

The ALJ also found that Plaintiff's reported daily activities[5] were inconsistent with her allegations of pain. Tr. [#10-2] at 34-35. Those activities include cooking simple meals; washing dishes; dusting; occasionally sweeping, mopping, or vacuuming; doing laundry with breaks; working around the home; climbing a flight of stairs; doing stretching exercises; and recreating. *Id*. at 61-64; Ex. 11F, Tr. [#10-7] at 1533. As outlined by the ALJ, this evidence conflicts with Plaintiff's claims of greater intensity, persistence, and limiting effects of her pain. The fact that the ALJ *acknowledged* that Plaintiff experiences pain does not amount to an inconsistency in the ALJ's final determination, as Plaintiff asserts. Instead, it reflects the ALJ's efforts to reconcile the portions of the objective medical evidence that were inconsistent with the magnitude Plaintiff's reports, as the ALJ was required to do.

The ALJ assigned less weight to Plaintiff's self-reported sitting limitations because they were not entirely consistent with or supported by the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(4) (stating that the ALJ must consider conflicts, if any, between a claimant's statements and other evidence). First, the ALJ noted that Plaintiff only reported on two occasions in the four-year period that her pain was worse with sitting. Tr. [#10-2] at 34 (citing Ex. 7F, Tr. [#10-7] at 1208, Ex. 11F, *id*. at 1532). On review of the substantial volume of medical records in this matter, the Court finds that it was reasonable

---

[5] Daily activities are an appropriate factor for the ALJ to consider in conducting this analysis. *See* SSR 16-3p, 2017 WL 5180304, at *7. The Court is cognizant of the fact that Plaintiff's self-reported daily activities from her August 21, 2023 pre-operation appointment were framed by the following prompt: "Yes means the patient can complete the activity *without cardiac symptoms*" and "No means the patient reports chest pain, presyncope, or shortness of breath that causes them to stop the activity." *See* Tr. [#10-2] at 32; Tr. [#10-7] at 1716-17 (emphasis added). Therefore, the Court does not consider this list of daily activities as probative of Plaintiff's limitations *from pain* and instead considers Plaintiff's other reports of daily activities, finding that they still provide substantial evidence to support the ALJ's determination.

for the ALJ to conclude that the two passing references were insufficient to support the conclusion that Plaintiff was precluded from sitting due to pain. Tr. [#10-2] at 36. Further, the ALJ noted that Plaintiff "sat comfortably throughout the history portion of the exam" with consultative examiner Dr. Moser. Tr. [#10-2] at 35 (citing Ex. 11F, Tr. [#10-7] at 1533).

Only one doctor, Jodie Mesa, DO, opined that Plaintiff was limited to sitting for less than an hour at a time. But the ALJ found Dr. Mesa's opinions unpersuasive because they were not supported by any objective physical exam findings. *Id.* at 36. Further, the ALJ noted that there was minimal evidence in the rest of the medical records to support Plaintiff's inability to sit or need for leg elevation. *Id.* Thus, to the extent that Plaintiff argues that her pain-based postural limitation must be either incorporated into the RFC or specifically rejected with a rationale, *see Opening Brief* [#13] at 50, the ALJ satisfied that requirement by rejecting the postural limitation with a rationale.

To be sure, Plaintiff highlights other evidence in the record corroborating her pain. For example, Plaintiff highlighted her efforts to seek medical care; her prescriptions for pain-management medications; advice she received from her medical providers; and her own testimony concerning how her pain limits her daily activities. *Opening Brief* [#13] at 42-43. To the extent her argument is based upon her own assessment of the evidence, rather than the ALJ's, it "amount[s] to an argument that this court should reweigh the evidence, which [the Court] cannot do." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

In an underdeveloped argument, Plaintiff asserts that the ALJ minimized the significance of her prescribed walker and cane. However, the record belies this assertion

13

because the ALJ considered Plaintiff's use of both devices and the contexts in which they were prescribed. *See* Tr. [#10-2] at 29-30, 34. The ALJ found that, although Plaintiff was prescribed a walker after her neck surgery, the weight of the medical evidence revealed that she primarily used her cane. *Id.* at 34. Plaintiff's testimony at the hearing confirmed as much. *Id.* at 55, 57. The ALJ incorporated Plaintiff's cane usage into the RFC. *Id.* at 28.

Finally, Plaintiff challenges the ALJ's failure to address the side effects of her various prescriptions. But an ALJ need not discuss every factor in his evaluation of self-described symptoms and limitations, but merely what was found to be probative. *See Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 843 (10th Cir. 2020). Here, Plaintiff does not elaborate why the side effects of her prescriptions are particularly probative, especially where she did not mention any side effects during her testimony. Further, she denied experiencing side effects in the Function Report she completed in connection with her application and only reported vision blurriness that lasts for an hour in an updated report. Ex. 8E, Tr. [#10-6] at 340, Ex. 18E, Tr. [#10-6] at 368. Therefore, Plaintiff's undeveloped argument renders unclear what, if any, harm was caused by the ALJ's failure to discuss this factor.

In sum, Plaintiff appears to argue that the ALJ simply got it wrong. However, despite differing interpretations of the evidence which may have been possible, the ALJ's discussion and conclusion is supported by substantial evidence. Accordingly, the Court finds that the ALJ did not commit reversible error in connection with Plaintiff's self-described pain.

**B.   RFC**

Plaintiff next challenges the ALJ's rationale for the RFC, describing it as a "hodgepodge of information without any logical bridge." *Opening Brief* [#13] at 50. The Court finds that the ALJ adequately explained each challenged portion of the RFC. As relevant here, the ALJ found that Plaintiff could

- stand or walk for 2 hours (requiring a cane for ambulation);

- sit for 6 hours;

- occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs;

- frequently handle, finger, and feel; and

- tolerate frequent exposure to pulmonary irritants.

Tr. [#10-2] at 28.

Plaintiff asserts that the portion of the RFC concerning her ability to handle, finger, and feel does not account for her hand tremors, spasms, and cramps. While Plaintiff argues that an ALJ "cannot ignore evidence that would support disability," *see Opening Brief* [#13] at 48 (citing *Frantz v. Astrue*, 509 F.3d 1299,1302-03 (10th Cir. 2007)), the Court is not persuaded that happened here. The ALJ specifically referenced the hand issues throughout his decision. Tr. [#10-2] at 31 ("She said her tingling and numbness had subsided since her neck surgery, but she still got cramping in her fingers."); *id.* ("In June 2023, she followed up with orthopedics regarding her neck and reported she had markedly less pain since her surgery, but occasional paresthesias in her fourth and fifth digits"); *id.* at 33 ("After the [neck] surgery, she reported the paresthesia of her upper extremities was improving and not constant anymore."). The ALJ also highlighted the

medical evidence that undermines Plaintiff's assertion that her occasional hand tremors and spasms were disabling. *Id.* at 32 ("She was able to do rapid alternating movements with her hands."); *id.* ("She had 5/5 strength in her upper and lower extremities, normal pinch and grip strength, normal bulk and tone, and no atrophy."); *id.* at 34 ("She also has had carpal tunnel release surgery in 2021.").

Of the five medical opinions considered, only one provider, Dr. Mesa, opined that Plaintiff was completely precluded from handling and fingering. *Id.* at 33-36. The ALJ acknowledged Dr. Mesa's finding and rejected it because "[t]he extreme preclusion of the use of her hands and arms are entirely inconsistent with her activities of daily living." *Id.* at 36. As already noted, those activities include cooking simple meals; washing dishes; dusting; occasionally sweeping, mopping, or vacuuming; doing laundry with breaks; working around the home; climbing a flight of stairs; doing stretching exercises; and recreating. Tr. [#10-2] at 61-64; Ex. 11F, Tr. [#10-7] at 1533; Ex. 15F, Tr. [#10-7] at 1640. On this record, the Court is satisfied that the ALJ did not "ignore" evidence supporting disability with respect to Plaintiff's hand spasms, tremors, and cramps. For the same reason, the ALJ did not err by failing to ask the vocational expert hypotheticals concerning the hand spasms. *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (finding no error where the ALJ's hypotheticals included all the limitations he properly determined the claimant to have).

To the extent that Plaintiff challenges the portions of the RFC concerning her ability to tolerate pulmonary irritants or to stoop, crouch, or kneel, Plaintiff's arguments render unclear how she was harmed. The ALJ concluded that Plaintiff could perform her past relevant work as a customer service representative as actually and generally performed—

16

a job she worked remotely from home. Plaintiff makes no argument that such a job would require exposure to pulmonary irritants or occasional stooping, crouching, or kneeling. *See Hunter v. Astrue*, 321 F. App'x 789, 793 (10th Cir. 2009) (holding that any error by the ALJ in his RFC determination in attributing to plaintiff greater capabilities than required for his past relevant work would be harmless).

Finally, regarding the portion of the RFC concerning Plaintiff's ability to sit, the Court incorporates by reference its analysis in Part IV(A). For these reasons, the Court finds that the ALJ did not commit reversible error in connection with the ALJ's RFC.

## C.    Evaluation of Medical Opinion Evidence

Finally, Plaintiff argues that the ALJ's evaluation of medical opinion evidence was legally deficient and not supported by substantial evidence. *Opening Brief* [#13] at 53-61.

An ALJ evaluates medical opinions using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c). "The two most important factors are supportability and consistency with the entire record." *Roy o/b/o Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.913(a)(3)).

Regarding supportability, the ALJ must consider whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "The supportability analysis looks at whether the medical source's

opinions are supported by the source's own notes, diagnoses, and explanations." *R.L.M. v. Kijakazi*, No. 22-cv-03179-NYW, 2023 WL 8355963, at *8 (D. Colo. Dec. 1, 2023).

Regarding consistency, the ALJ must compare the medical source's opinions and "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

While the Regulations do not mandate at what depth the ALJ must discuss supportability and consistency, the ALJ must at least "provide an explanation that allows the reviewing court to follow [his] reasoning and communicates how [he] considered [those two factors] for each medical source's opinions." *R.L.M.*, 2023 WL 8355963, at *8 (internal quotation marks and citation omitted).

Here, the ALJ considered five medical opinions. The ALJ first considered the opinions of state agency examiners Dr. Holtgrewe at the initial level and Dr. Tommen at the reconsideration level. As relevant here, both examiners limited Plaintiff to light work. Tr. [#10-2] at 33. Dr. Holtgrewe imposed no sitting limitation and opined that Plaintiff could frequently handle, finger, and feel. *Id.* Dr. Tommen similarly imposed no sitting limitation and no manipulative limitations. *Id.* The ALJ next considered the opinions of consultative examiners Dr. Moser and Dr. Blanchard. *Id.* at 35. Dr. Moser examined Plaintiff in January 2023 and opined that she should not sit for more than 6 hours and can frequently handle, finger, and feel. *Id.* Dr. Blanchard examined Plaintiff in August 2023 and opined that she should not sit for more than 2 hours and can frequently handle, finger, and feel. *Id.* Finally, the ALJ considered the opinion of Plaintiff's primary care provider, Dr. Mesa, who opined

18

that Plaintiff should not sit for more than 1 hour and is entirely precluded from reaching, handling, and fingering bilaterally. *Id.* at 36.

After discussing the consistency, supportability, and persuasiveness of each opinion, the ALJ crafted an RFC somewhere in the middle of the diverging opinions. *Id.* at 33-36. In other words, the ALJ found Plaintiff more limited than as opined by the State agency physicians and Dr. Moser, but less limited than as opined by Dr. Blanchard and Dr. Mesa.

As to Dr. Holtgrewe and Dr. Tommen, Plaintiff argues that the ALJ relied on the same objective medical evidence in the record to both "reject their light RFC" and to support his own "reduced-sedentary RFC," creating "circular reasoning rather than a clear consistency comparison." *Opening Brief* [#13] at 57. However, an ALJ does not create an inconsistency simply by reconciling conflicting evidence in the record. *See Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views[.]"). "Indeed, the ALJ is often tasked with weighing the inconsistencies between conflicting medical opinions, and it is permissible for the ALJ to 'adopt[ ] a middle ground that [does] not fully embrace either one.'" *Lara v. Kijakazi*, No. 20-cv-02007-NYW, 2021 WL 3883636, at *8 (D. Colo. Aug. 31, 2021) (quoting *Guillar v. Comm'r, SSA*, 845 F. App'x 715, 719 (10th Cir. 2021)). "The Tenth Circuit has 'affirmed such an approach as consistent with the ALJ's prerogative to weigh the medical evidence before [him].'" *Id.* (quoting *Guillar*, 845 F. App'x at 719). And although the ALJ found Plaintiff to be more restricted than the state agency examiners opined, it does not follow that the ALJ was required to adopt wholesale the opinion of the examiner most favorable to Plaintiff. *See id.*

As to Dr. Moser and Dr. Blanchard, Plaintiff asserts that the ALJ arbitrarily applied inconsistent standards between their opinions, substituting his lay judgment for medical expertise. *Opening Brief* [#13] at 58. The record belies Plaintiff's argument. In January 2023, Dr. Moser opined, in relevant part, that Plaintiff required a cane for ambulation and could sit for up to 6 hours per day. Ex. 11F, Tr. [#10-7] at 1536. In August 2023, Dr. Blanchard opined that Plaintiff must use a four-wheeled walker for all walking and could only sit for 2 hours per day. Ex. 16F, Tr. [#10-7] at 1681-82. Thus, the ALJ did not arbitrarily accept one opinion and reject the other. Instead, the ALJ identified the following concrete reason for finding Dr. Moser's opinion more persuasive than Dr. Blanchard's:

> Although [Dr. Blanchard's opinions] are somewhat consistent with and supported by his exam of the claimant, they are not consistent with the record overall. The claimant's presentation during this consultative exam was wholly inconsistent with her previous exams, and there is no evidence of worsening of her conditions since those prior exams.

Tr. [#10-2] at 35. For example, the ALJ noted that during Plaintiff's physical exam with Dr. Moser in January 2023, she walked with the assistance of a cane. Ex. 11F, Tr. [#10-7] at 1534. However, during her examination with Dr. Blanchard, Plaintiff used a four-wheeled walker and a cane. Ex. 16F, Tr. [#10-7] at 1679-80. In January 2023, with Dr. Moser, Plaintiff "was able to sit comfortably throughout the history portion of the examination" and "was able to get on and off the examination table without difficulty." Ex. 11F, Tr. [#10-7] at 1533. In August 2023, with Dr. Blanchard, she was only able to "sit comfortably for a short period of time." Ex. 16F, Tr. [#10-7] at 1679. Although Dr. Blanchard at one point noted that Plaintiff was able to "get on and off the exam table" and "take off her shoes and put them on again," *id.*, he later noted that Plaintiff "appears to be in considerable pain . . . with attempting to get on and off the exam table." *Id.* at 1681. Thus, to the extent

that Plaintiff argues that the ALJ rejected Dr. Blanchard's opinion without identifying objective contradictions, the argument misses the mark.

Further, the ALJ identified evidence from the medical record that showed that Plaintiff's pain was *improving* during the interim period, not worsening, suggesting that her presentation during the examination with Dr. Blanchard was inconsistent with the record as a whole. Tr. [#10-2] at 31 (citing Ex. 15F, Tr. [#10-7] at 1597 (noting knee pain well-controlled with regular steroid injections in May 2023); Ex. 17F, Tr. [#10-7] at 1733 (stating, on June 27, 2023, that Plaintiff has markedly less neck pain since neck surgery)). And in a different appointment just days before her examination with Dr. Blanchard, Plaintiff was noted to ambulate with a cane and was "able to get on and off the examination table independently with a stepstool." Tr. [#10-2] at 32 (citing Ex. 17F, Tr. [#10-7] at 1718). Therefore, the Court is satisfied that the ALJ's reconciliation of Dr. Moser's and Dr. Blanchard's diverging opinions is supported by substantial evidence.

Finally, Dr. Mesa opined that Plaintiff was limited to sitting less than 1 hour, must elevate her legs to waist level 70% of the day, must lie down at least 4 times per day for 30 minutes, is precluded from handling and fingering, would need 30 minute rest breaks every 30 minutes, and would be absent from work more than three times per month. Tr. [#10-2] at 36 (citing Ex. 4F, Tr. [#10-7] at 1091-94; Ex. 7F, *id*. at 1371-74; Ex. 14F, *id*. at 1574-77; Ex. 15F, *id*. at 1664-67; Ex. 19F, Tr. [10-8] at 2323-26). The ALJ found Dr. Mesa's opinions unpersuasive for the following reasons:

> First, it was not well supported as she only noted the claimant's diagnoses and referenced imaging and "specialty notes" but did not cite or include any objective physical exam findings. She is also not an orthopedic or neurosurgery specialty with any specific familiarity with the Agency's evidentiary standards or performing functional capacity evaluations. Her own objective findings are also not consistent with these limitations (E.g.,

> 12F/11, 25, 58; 17F/48; 18F/308-309, 375). Her own documented subjective allegations are also not consistent with these limitations (E.gf., 12F/10, 24, 57; 17F/48). There is minimal evidence to support the need for leg elevation or sitting difficulties. The extreme preclusion of the use of her hands and arms are entirely inconsistent with her activities of daily living. She has also never had any documented deficits in terms of her attention and concentration.

Tr. [#10-2] at 36. Although Dr. Mesa's opinions were not supported by objective physical examination findings, notes, or explanations, the ALJ nevertheless considered Dr. Mesa's objective and subjective findings elsewhere in the record, concluding that those findings did not support her opinions. For example, Dr. Mesa's objective findings during her routine appointments with Plaintiff did not contain the type of range of motion measurements and tests that the consultative examiners used to support their opinions. *See* Ex. 12F, Tr. [#10-7] at 1548, Ex. 17F, *id*. at 1732; Ex. 18F, Tr. [#10-8] at 2118-19, 2184-85. In January 2023, Dr. Mesa noted that Plaintiff is "trying to get exercise with her 4 pronged cane up to a mile." Ex. 12F, Tr. [#10-7] at 1547.

Plaintiff asserts that the ALJ erred by failing to address the supportability, treating relationship, and specialization factors. *Opening Brief* [#13] at 59-60. First, an ALJ "may, but [is] not required to, explain how [he] considered" the relationship with the claimant factor. 20 C.F.R. § 404.1520c(b)(3). Thus, Plaintiff has not shown that the ALJ's failure to address Dr. Mesa's treating relationship with Plaintiff was reversible error. Second, the record squarely contradicts Plaintiff's argument that the ALJ did not address the supportability and specialization factors. The ALJ addressed the supportability factor in two parts—first by noting that Dr. Mesa's opinion did not include physical examination findings, notes, or explanations, and second by considering her findings elsewhere in the record. Simply because the Plaintiff disagrees with the outcome of the ALJ's supportability assessment does not mean that the ALJ committed reversible error by failing to address

it at all. Tr. [#10-2] at 36. As to the specialization factor, the ALJ further found that Dr. Mesa is "not an orthopedic or neurosurgery specialty with any specific familiarity with the Agency's evidentiary standards or performing functional capacity evaluations." *Id.* Plaintiff identifies no error in that finding.

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with the ALJ's weighing of the various medical opinions provided in this matter.

## V. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: July 20, 2026                                BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge